IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 13-cr-00307-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  KEVIN ADAM POMPA

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through, Jeremy Sibert, Assistant United States Attorney for the District of Colorado, and the defendant, KEVIN ADAM POMPA , personally and by counsel, Matthew Belcher, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

The defendant agrees to plead guilty to the Indictment, charging a violation of 18 U.S.C. §§ 922(g)(1) and 924, Possession of a Firearm and Ammunition by a Prohibited Person. For purposes of calculating the United States Sentencing Guidelines, the government agrees that the defendant should receive full credit for his acceptance of responsibility.

### II. ELEMENTS OF THE OFFENSE

The essential elements of the crime of possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. c 922(g)(1), are:

EXHIBIT 1

*First*: the defendant knowingly possessed a firearm and ammunition;

*Second*: the defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm and ammunition; and

*Third*: before the defendant possessed the firearm and ammunition, the firearm and ammunition had moved at some time from one state to another or from a foreign country to the United States.

The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive.

### III. STATUTORY PENALTIES

Pursuant to 18 U.S.C. § 924(a)(2), the maximum statutory penalty for a violation of 18 U.S.C. § 922(g)(1) is: not more than 10 years imprisonment; not more than a $250,000.00 fine, or both; not more than 3 years supervised release; $100.00 special assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV.  COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea[s] that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is May 22, 2013.

The parties agree as follows: On May 22, 2013, the defendant, Kevin Adam Pompa, being a convicted felon, did unlawfully possess a firearm and ammunition.  On May 22nd, Colorado Parole Officers conducted a parole office visit with defendant Pompa.  The officers obtained a parole complaint against Pompa for several parole violations and proceeded to arrest when Pompa when he arrived for his appointment.

3

During the search incident to arrest, the officers located a set of vehicle keys from Pompa's pant pocket. The officers inquired if Pompa had driven to the office in which he first denied but then informed the officers that the vehicle was parked. The officers located a tan-colored Chevrolet Tahoe SUV that responded to the keys located on Pompa. The officers used the keys to unlock the vehicle and conduct a search. The officers recovered a Cobra CA-32 .32 caliber pistol loaded with six rounds of .32 caliber ammunition from the middle console. In addition, the officers found various papers, including a vehicle bill of sale and vehicle title registration, in Pompa's name. A small amount of morphine was also located within the vehicle. The officers advised Pompa that he was under arrest for the parole violations, that he would be charged with Possession of a Weapon by a Previous Offender, and he was read his *Miranda* rights. When the officers advised Pompa that he would be charged with Possession of a Weapon by a Previous Offender, Pompa replied, "I'm fucked."

ATF conducted a function check on the firearm. The firearm functioned correctly.

Record checks confirm that defendant Pompa had a prior felony conviction for Felony Menacing Real/Simulated Weapon in Adams County District Court case number 06CR1453 and 2nd Degree Assault Drugging Victim in Denver County Court case number 07CR4548.

The parties agree that the firearm and ammunition were not manufactured in the State of Colorado and therefore traveled in interstate commerce prior to the defendant possessing them. Denver is within the District of Colorado.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

    A.    The base guideline is §2K2.1, with a base offense level of 20.

    B.    No specific offense characteristics.

    C.    There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments which apply.

    D.    The adjusted offense level therefore would be 20.

    E.    Three levels off for acceptance of responsibility, resulting in an offense level of 17.

    F.    The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be IV.

    G.    The career offender/criminal livelihood/armed career criminal adjustments do not apply.

  H. The advisory guideline range resulting from these calculations is 37-46 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 24 months (bottom of Category I) to 63 months (top of Category VI).

  I. Pursuant to guideline §5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 5,000 to $ 50,000, plus applicable interest and penalties.

  J. Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term is at least two years, but not more than 3 years.

  The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

  No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any *18 U.S.C.* § 3553 factor.

### VII.   ENTIRE AGREEMENT

This document states the parties" entire agreement.   There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.   In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 10-10-13

_____
KEVIN ADAM POMPA
Defendant

Date: 10/10/13

_____
MATTHEW BELCHER
Attorney for Defendant

Date: 10/16/13

_____
JEREMY SIBERT
Assistant U.S. Attorney