IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:13-cr-00307-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  KEVIN ADAM POMPA,

    Defendant.
_____

**UNITED STATES' RESPONSE IN OPPOSITION TO
THE DEFENDANT'S MOTIONS FOR DEPARTURE AND VARIANCE**
_____

    The United States of America, through undersigned counsel, respectfully submits this Response in Opposition to the Defendant's Motions for Downward Sentencing Variance Pursuant to 18 U.S.C. Section 3553.

## I. INTRODUCTION

    Defendant Pompa, pled guilty on October 16, 2013 to unlawfully possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1).  Facts agreed to by Defendant in the course of his guilty plea included (1) *that the defendant possessed a Cobra CA-32 .32 caliber pistol that was loaded with six rounds of .32 caliber ammunition*, (2) that a small amount of morphine was located in the defendant's vehicle, and (3) that the defendant was on state probation for his prior offenses when he possessed the firearm and ammunition.  The defendant when advised that he was going to be charged with a felony firearm offense responded by stating, "I'm fucked."

1

In his motion, Defendant argues for a 37 month sentence and three years of supervised release. Probation is recommending a sentence of 57 months for a defendant that has a criminal history category of IV. The defendant relies on a policy argument concerning U.S.S.G. § 2K2.1 and 18 U.S.C. § 3553 for his argument. The government disagrees with the defendant's position and argues that a 64 month sentence is appropriate in this case.

## II. ARGUMENT

**A.     The Base Offense Level is Properly Set at 20.**

First, the parties and the U.S. Probation Office found that the base offense level is 24, pursuant to U.S.S.G. § 2K2.1, because Defendant's record includes two felony crimes of violence. Defendant has two prior felony convictions, including Menacing and a Second Degree Assault by Drugging a person. Both convictions are crimes of violence. Thus, the 24 level base in § 2K2.1(a) applies.

Nonetheless, Defendant contends that 24 is an inappropriate base offense level because he objects to an amendment to the § 2K2.1 offense levels that was effected in 1991.

Currently, § 2K2.1 assigns a base offense of 24 to defendants who violate 18 U.S.C. § 922(g) "subsequent to sustaining two felony conviction of either a crime of violence or a controlled substance offense." Prior to1991, under the guidelines, all defendants convicted of violating 18 U.S.C. § 922(g) were assigned a base offense level of 12, regardless of whether they had prior felony convictions for crimes of violence or controlled substance offenses. USSC, Guideline Manual, § 2K2.1(a)(2) (Nov. 1990).

2

In 1991, amendment 374 raised the base offense level for a defendant with a prior felony conviction involving a crime of violence or controlled substance offenses from 12 to 20.   The base offense level for other felons increased from 12 to 14.

### Reasons for the Changes and Counter Argument

USSC made these changes to the guidelines based on the December 1990 report released by the USSC's Firearms and Explosive Materials Working Group.  U.S. Sentencing Commission, <u>Firearms and Explosive Materials Working Group Report</u> 1 (Dec. 11, 1990).   The working group's recommendations were based on a review of "firearms and explosives monitoring date, case files, and appellate decisions," as well as comments from the field and ATF."

First, increasing the base offense level for felons with a crime of violence or substance offense complied with Congress's intent to punish firearm offenders more harshly when they have criminal records.   For example in the Gun Control Act, 18 U.S.C. § 924(a), provides a maximum of ten years for possession of firearms by a prohibited persons (18 U.S.C. § 924(d), (g), and (h)) but only a five year maximum sentence for most other violations under the Act.

In addition, § 924(e) mandates a minimum sentence of 15 years for a person convicted of violating § 922(g) who has three prior convictions for violent felonies or drug offenses.  The group found that in order to preserve sentence proportionality, base offense level increases was needed for felons that had one or two violent or drug offenses.  *Id.* at 20-21.  If the USSC did not increase the base offense level for § 922(g), violators with two violent or drug felonies would receive a sentence of 10 to 16 months,

while a violator with three qualifying felonies would receive a 151-180 month sentence.[1]

Further, whether or not a 15 year mandatory minimum sentence under § 924(e) is sought is a matter of prosecutorial discretion. However, by raising the base offense level for a prior felon with two qualifying priors, there is a reduction of potential sentencing disparity. *Id.* at 22. A defendant who did not receive a 15 year statutory mandatory minimum would still be subject to a harsher sentence due to having two qualifying prior felonies.

Also, the working group found that increase in the guidelines would help address incapacitation and deterrence concerns. Letters from ATF expressed that the guideline sentences for violations under § 922(g) were too low to adequately deter serious criminals from possessing firearms. Furthermore, ATF noted in their letters that it was difficult to prosecute violators of § 922(g) who had a history of violence or drug offenses because U.S. Attorneys were reluctant to prosecute crimes with such low sentences. *Id.* at Appendix A and B.

The empirical evidence of case studies (prior to 1991 changes) show that approximately 93 percent of violators for § 922(g) received guideline sentences. In fact, felons with prior convictions for related firearm offenses that had violent and drug related pasts were sentenced at the upper end of the guidelines 37 percent of the time as compared with all the guidelines (approximately 15%). Prior to the sentencing guidelines, defendants convicted of violating § 922(g) where sentenced to an average of 40 to 60 months. A base offense level of 20 coupled with a criminal history category of

---

[1] During this time, 1990, the sentencing guidelines had not yet become advisory.

II would lead to a sentence range of 37-46 months.  Consistent with the increase of the base offense levels.  An argument can be made that the pre-1991 guidelines were not empirically based because they were not in accordance with pre-guideline sentencing.  *Id*. at 31.

In addition to case review and empirical data collection, the USSC's reasons for amending guideline 2K2.1 were in accordance with the USSC's statutory mission and institutional role, and thus the guidelines can be considered a reasonable map to a sentence that achieves 18 U.S.C. § 3553(a)'s congressional objectives.  Title 28, U.S.C., Sections 991-994 create the USSC and explains its mission and how that mission is to be carried forth.   28 U.S.C. § 991(b) states that the USSC should establish sentencing policies that assure the purposes of sentencing laid out in 18 U.S.C. § 3553(a) are met.   By increasing the base offense levels for violations of 18 U.S.C. § 922(g) for offenders with prior crimes of violence and drug offenses, the purposes of 18 U.S.C. § 3553(a) are met in that the base offense level now reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and deters criminal conduct.

Also, the working group reasoned that the guidelines had to show fairness in sentencing.  As in § 3553(a), 28 U.S.C. § 922(b)(1)(B) instructs the USSC to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.   Again, one of the reasons for increasing the base offense level for violations of § 922(g) for felons with a past history of crimes of violence or substance offenses is to avoid disparity in sentencing that could arise from

5

the use of prosecutorial discretion under 18 U.S.C. § 924(e).  Increasing the base offense level is providing the mandated fairness in sentencing as directed under 28 U.S.C. § 991(b).

Finally, the law directs the USSC to periodically revise the guidelines based on "comments and data coming to its attention" and in consultation with "authorities on, and individual and institutional representatives of, various aspects of the federal criminal justice system."  28 U.S.C § 944(o).  Therefore empirical evidence is not the only tool that the USSC may use to evaluate and revise the guidelines.  The law directs the USSC to consider not only data but comments and consultations from within the federal criminal justice community.[2]

### USSG Policy Statement

Section 1A1.3 of the guidelines sets forth the policy statement which states Congress sought to achieve three objectives in creating the USSC: honesty in sentencing, uniformity in sentencing, and proportionality in sentencing.  The working group concluded that an increase for violators of § 922(g) for felons with prior violent

---

[2] Proposed amendments to the guidelines, including amendment 374, were published in the Federal Register on November 7, 2000, and January 26, 2001.  The USSC received extensive written comment on the proposed amendments and conducted a general public hearing on March 19, 2001.  Witnesses in the public hearing included the following members: Robert S. Mueller, III, Acting Deputy Attorney General, U.S. Department of Justice; Charles O. Rossotti, Commissioner, U.S. Internal Revenue Service; John Malone, Bureau of Alcohol, Tobacco & Firearms; A.J. Kramer and Jon Sands, Federal Public & Community Defenders; Brian Maas, New York Council of Defense Lawyers; Edward A. Mallett, David E. Nichols, Charles S. Grob, National Association of Criminal Defense Lawyers; Julie Stewart, Families Against Mandatory Minimums; William D. McColl and Julie Holland, The Lindesmith Center-Drug Policy Foundation; Richard Glen Boire, The Center for Cognitive Liberty and Ethics, and Rick Doblin, Multidisciplinary Association for Psychedelic Studies.  The amendments were provided to Congress by May 1, 2001 and became effective on November 1, 2001.  United States Sentencing Commission 2001 Annual Report, Chapter 2.

and substance offenses will enhance both uniformity and proportionality in sentencing. U.S. Sentencing Commission, Firearms and Explosive Materials Working Group Report 20-22 (Dec. 11, 1990). Further, the policy statement states that the purpose of the USSC is to "enhance the ability of the criminal justice system to combat crime through an effective, fair, sentencing systems." Section 1A3. Based on the data, case review, comments, and consultations, the working group concluded that low base offense levels for violators of 922(g) that had prior violent and substance offenses were negatively affecting the ability of the criminal justice system to combat crime by making it difficult for the ATF to prosecute criminals. Firearms and Explosive Materials Working Group Report at Appendix A.

Notably, however, Defendant cites no court in the 23 years – and probably many thousands of federal firearms cases – since that 1991 amendment has been in force to validate his objection.[3] The Government submits that the 1991 change to the base offense levels in § 2K2.1 is time-tested by 2014, and Defendant's complaints about the Commission's policy decisions more than two decades after the fact should be rejected.

Furthermore, Defendant's contention fails to overcome the presumption of regularity that attaches to the acts of the Commission. "A presumption of regularity attends the Commission's doings, as it does that of other official bodies." *United States v. Tomasino*, 206 F.3d 739, 742 (7th Cir. 2000) (Posner, J.); *see also United States*

---

[3] Defendant's objection has been rejected in the past. *See United States v. Cooper*, 35 F.3d 1248, 1255 (8th Cir. 1994) *vacated on other grounds* 514 U.S. 1094 (1995) (the reasons given for the 1991 amendment were sufficient, and "we find no error on the part of the district court in refusing to find that the November 1, 1991, amendments to § 2K2.1 of the Sentencing Guidelines were promulgated in violation the enabling legislation or congressional intent").

7

*Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (noting "that a presumption of regularity attaches to the actions of Government agencies"). "In the absence of clear evidence to the contrary, courts presume that [public officials] have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). Here, Defendant has not pointed to any evidence in his motion – much less "clear evidence" – that can overcome the presumption that the Commission did consider the required variety of data in promulgating the base offense level for § 2K2.1(a). Accordingly, the Court should resolve any doubt as to the Commission's compliance with the congressional mandate in favor of the Commission and reject Defendant's attack on the Commission and § 2K2.1.

In addition, Defendant Pompa argues that *Rita v. United States* stands for the proposition that the federal advisory guidelines can only be assumed to "reflect a rough approximation of sentences that might achieve 3553(a)'s objectives" when the guidelines are based on "judicial feed back or empirical research." In coming to this conclusion, the Court emphasized that the USSC created and revises the guidelines based both on empirical data on sentencing practices and on input from the federal criminal justice community. *Rita v. United States*, 551 U.S. 338, 349-50 (2007).

In *United States v. Booker*, 543 U.S. 220 (2005) the guidelines were not mandatory in nature but advisory. However, the Court did state that the sentence imposed by a district court must be reasonable in nature. *Id.* In *Gall v. United States*, 552 U.S. 38, (2007), the Court stated that the advisory guidelines are the "starting point and initial benchmark" for issuing a sentence on a defendant. To impose a sentence

8

below (or above) the Guideline range, the Court needs to find something "sufficiently compelling." *Gall* at 50.  Also, the sentencing court should consider all of the factors of 18 U.S.C. § 3553(a) in determining whether to support either party's proposal for a requested sentence. *Id.*

## Case at Hand

After a long theoretical review of the advisory guidelines, the government would like to turn the Court's attention to the case at hand and defendant Pompa.  Defendant Pompa PSR base offense level is 24.   Applying acceptance of responsibility, his offense level drops to 21.  Based on defendant Pompa's past convictions for felony convictions, Pompa's criminal history is an IV, resulting in an advisory guideline range of 57-71 months.

Title 18, United States Code, Section 3553 states that the sentencing court shall impose a sentence sufficient, but not greater than necessary to: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  Also, the sentencing court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant, the types of sentences available, the sentencing range established for the applicable category of offense committed by the defendant, any pertinent policy statement, the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense.  See 18 U.S.C. § 3553.

In addition, Congress stated that the primary purpose within 18 U.S.C. § 3553 was the elimination of sentencing disparity between defendants that had committed similar crimes.  See S. REP. No. 98-225 (1983), *as reprinted* in 1984 U.S.C.C.A.N., 3182, 3235.   The primary purpose of the 1984 Sentencing Reform Act was to ensure that the sentence adequately reflected the harm done and achieve the public's interest in deterrence.  S. REP. No. 98-255 (1983), *as reprinted* in 1984 U.S.C.C.A.N., 3182, 3259.

A guideline sentence in this case is appropriate due to the nature and characteristics of the offense, the defendant's involvement in this case, his criminal history, the likelihood that the defendant will violate the law, the safety of the community, and the defendant's disrespect for the law and orders of this Court after being arrested.  First, Defendant Pompa has two serious felony convictions as an adult and one felony conviction as a juvenile.  Defendant Pompa's past convictions for menacing and assault clearly shows that he has a violent behavior and is a danger to the community.

Also, the defendant was sentenced to six years for his 2nd Degree Assault-Drugging a victim and then placed on probation.  Approximately just a year after being placed on parole for his second adult felony conviction, the defendant was in possession of a loaded firearm.  The defendant has been in trouble with the law since age 16 and continues to show little or no respect for the law.  He continues to violate the

law even when he is under the watchful eyes of the courts.  Clearly his past behavior and his continual violations of the law places society in danger.  A violent person like defendant Pompa should never be in possession of a loaded firearm.  The only time the defendant is not violating the law is when he is in jail.

For the foregoing reasons, the United States asks that the Court deny Defendant's Motion a Downward Sentencing Variance.  This defendant has earned his criminal history by continuing to violate the law and show violent behavior.   A defendant with three felony adult convictions does not deserve a low end guideline sentence.  The government argues there are more logical reasons for an above the guideline sentence but believes justice can be served with a 64 month sentence.

    Respectfully submitted,

    JOHN F. WALSH
    United States Attorney

    By:  s/Jeremy Sibert
    Jeremy Sibert
    Assistant U.S. Attorney
    United States Attorney's Office
    1225 Seventeenth Street, Suite 700
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    E-mail: Jeremy.Sibert@usdoj.gov
    Attorney for the Government

## CERTIFICATE OF SERVICE

      I hereby certify that on this 6th day of January, 2014, I electronically filed the foregoing **UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A DOWNWARD SENTENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Matthew Belcher
Matthew_Belcher@fd.org
Attorney for the Defendant

      By: s/Amanda Doyle
AMANDA DOYLE
Legal Assistant
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0406
E-mail: Amanda.Doyle2@usdoj.gov