IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 13-cr-00307-RM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

KEVIN ADAM POMPA,

       Defendant.

---

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO VACATE 28 U.S.C. § 2255

---

Defendant Kevin Pompa has filed a motion under 28 U.S.C. § 2255 seeking to vacate his 48-month sentence for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 30. Pompa relies on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), is unconstitutionally void for vagueness. Based on *Johnson*, Pompa asserts that he no longer qualifies as a career offender pursuant to U.S.S.G. § 4B1.1 because his prior conviction no longer qualify as a "crime of violence." Pompa's motion should be denied because he has procedurally defaulted his claim and cannot meet the cause-and-prejudice standard; because *Johnson* is not retroactive to claims under the Sentencing Guidelines; and because his prior convictions are still crimes of violence. Even if Pompa can overcome these hurdles, this Court should not reduce his sentence.

## BACKGROUND

On July 22, 2013, a grand jury in the District of Colorado returned a one-count indictment charging Pompa with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On October 16, 2013, Pompa pled guilty to the indictment pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B).

1

Under the applicable Sentencing Guideline, USSG § 2K2.1, Pompa was subject to an initial offense level of 24. After an adjustment for acceptance of responsibility, Pompa total offense level was 21. Based on two prior Colorado convictions for Felony Menacing and 2nd Degree Assault-Drugging a Victim, Pompa base offense level was 24 under USSG § 2K2.1. With a Criminal History Category IV, his sentencing range was 57 to 71 months.

On January 8, 2014, this Court imposed a sentence of 48 months. Pompa did not appeal.

## ARGUMENT

## POMPA IS NOT ENTITLED TO RELIEF FROM HIS SENTENCE

Pompa was sentenced under the Guideline applicable to possession with a firearm, USSG § 2K2.1 Section 2K2.1 of that Guideline requires a base offense level of 24 for a defendant with two prior crimes of violence convictions. The term "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." In turn, Section 4B1.2(a), part of the career offender Guideline, defines "crime of violence" as a felony under federal or state law that

(1) has as an element the use, attempted use, or threatened use of physical force against the
person of another, or

*(2)* is burglary of a dwelling, arson, or extortion, involves the use of explosives, *or otherwise
involves conduct that presents a serious potential risk of physical injury to another*.

Clause (1) is the "elements clause," and the portion of (2) in italics is the "residual clause." The "residual clause" in the text of Section 4B1.2 is identical to the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA), that the Supreme Court found to be void for vagueness in *Johnson*. Application Note 1 of the Commentary to Section 4B1.1 contains the following additional definition that is not present in the ACCA:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the court of

2

>which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

USSG § 4B1.2, Application Note 1.

As set forth below, the government concedes that the Court's holding in *Johnson* applies to the residual clause of Section 4B1.2 for cases on direct appeal, but does not agree that Pompa is entitled to relief.

### I.  Pompa's procedurally defaulted his *Johnson* claim and cannot show cause and prejudice.

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review." *Sanchez-Lamas v. Oregon*, 548 U.S. 331, 350–51 (2006). A defendant can overcome that bar if he shows cause and prejudice for his procedural default or "actual innocence." *See id.* at 351; *see also United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). To show "cause," a defendant "must ordinarily . . . show that some factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Supreme Court has made clear, however, that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Instead, a defendant who failed to raise a claim on direct appeal must show ineffective assistance of counsel to establish cause. *Id.* at 488–89.

To establish "prejudice," a defendant must show that he suffered actual prejudice from the error that he alleges. *See United States v. Frady*, 456 U.S. 152, 168 (1982). In particular, a defendant must show that the alleged error "'worked to his *actual* and substantial disadvantage.'" *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting *Frady*, 456 U.S. at 170). To satisfy the cause-and-prejudice standard, a defendant must demonstrate prejudice "significantly greater than that necessary" under the plain error standard.

3

*Murray*, 477 U.S. at 493–94.  Accordingly, it is not sufficient to show only that the district court misapplied the career offender Guidelines.  *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016) (rejecting a "categorical rule" for showing prejudice under the plain error standard, requiring court to "consider the facts and circumstances of the case before it," and noting that a defendant cannot obtain relief when "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range").

Finally, as applied to sentencing, the "actual innocence" exception is not satisfied by a Guidelines error.  *See Gibbs v. United States*, 655 F.3d 473, 478 (6th Cir. 2011) ("Even if the 'actual innocence' exception applies in some noncapital sentencing contexts, we believe that the exception does not permit prisoners to raise claims about guidelines calculations in a collateral attack."); *Gilbert v. United States*, 640 F.3d 1293, 1322 (11th Cir. 2011) (no application of "actual innocence" exception in mandatory Guidelines contexts, in part because defendant would be "statutorily eligible" for same sentence without career offender designation); *see also Dretke v. Haley*, 541 U.S. 386, 393–94 (2004) (Supreme Court has not decided whether actual innocence applies to non-capital sentence); *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992) (in the capital sentencing context "the exception for 'actual innocence' is a very narrow exception" addressing eligibility for capital punishment).  For that reason, the "actual innocence" exception to the cause-and-prejudice standard is inapplicable to Pompa's Section 2255 motion.

Pompa pleaded guilty and was sentenced in 2014.  He does not argue that he claimed at sentencing or on appeal that the career offender Guidelines were vague.  Accordingly, he must meet the cause-and-prejudice standard.

Pompa cannot show cause because, as set forth above, he cannot show ineffective assistance of counsel in failing to raise a *Johnson* claim.  Nor can Pompa show cause under any other standard.  For example, Pompa cannot claim that raising a *Johnson* claim would have been futile because the Supreme Court has twice held that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted); *Engle v. Isaac*, 456

U.S. 107, 130 n.35 (1982).  Nor was there a "solid wall of circuit authority" that could excuse Pompa's failure to raise a vagueness claim on direct appeal.  *See English v. United States*, 42 F.3d 473, 479 (9th Cir. 1994) (internal quotation marks omitted).  Finally, at the time that Pompa was sentenced and appealed, a claim of unconstitutional vagueness was not so "novel" that Pompa could be excused for failing to raise it.  *See Reed v. Ross*, 468 U.S. 1, 16 (1984) (finding "cause" where claim was "novel" in state proceeding).  When Pompa pleaded guilty, the Tenth Circuit had held that the Sentencing Guidelines could be challenged on vagueness grounds.  *See United States v. Bennett,* 329 F.3d 769 (10th Cir. 2003).  In short, Pompa cannot show cause.

Pompa also cannot show "prejudice."  Pompa was sentenced after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and this Court therefore had nearly unfettered discretion to impose any sentence that Congress made applicable to his offense.  To reiterate, Pompa must show more than the prejudice necessary to establish "plain error."  *See Frady*, 456 U.S. at 157.

Pompa has not made a showing of prejudice beyond his bare assertion that the Court erred in finding that his prior convictions qualified as a predicate under the career offender Guideline.  In particular, Pompa cannot meet his burden to show that the Court relied on the Guideline to determine his sentence or instead "thought the sentence it chose was appropriate irrespective of the Guidelines range."  *Molina-Martinez*, 136 S. Ct. at 1346.   Finally, as set forth in Part IV, Pompa has not shown that he would have been sentenced to a different term if the Court had calculated the Guidelines differently.

Because Pompa cannot show either cause or prejudice, his Section 2255 motion should be denied.  *See Ross v. United States*, 2016 WL 2642272, at *3 (E.D. Wis. May 6, 2016) (Crabb, J.) (finding *Johnson* claim barred by cause-and-prejudice standard); *Clark v. United States*, 2016 WL 845271, at *25 (E.D. Wis. Mar. 4, 2016) (Gilbert, J.) (same); *Williams v. United States*, 2016 WL 183496, at *3 (W.D.N.C. Jan. 14, 2016) (same).[1]

---

[1] Other district courts have declined to apply the cause-and-prejudice standard to foreclose *Johnson* claims.  *See United States v. Dean*, 2016 WL 1060229, at *5–*12 (D. Or.

**II.     *Johnson* is not retroactive to challenges to the career offender Guidelines.**

The rule announced in *Johnson* is not retroactive on collateral review to career offender designations because a career offender designation results from a procedural application of the Sentencing Guidelines, not a substantive interpretation of a statute.  Although the government agrees that the rule announced in *Johnson* is "new" as that term is used in *Teague*, *see Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013), and that it applies to a challenge to the career offender residual clause that arises on direct appeal, Pompa is not entitled to relief based on *Johnson* in his Section 2255 motion.

Under *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), and its progeny, courts generally refuse to apply (or announce) new rules of criminal procedure for the first time in cases on collateral review.  *Id*. at 311; *see also Stringer v. Black*, 503 U.S. 222, 228 (1992) (referring to the "interests in finality, predictability, and comity underlying our new rule jurisprudence").  Instead, only a "new," substantive rule or a "watershed" rule of criminal procedure applies retroactively.[2]  S*ee Welch v. United States*, 136 S. Ct. 1257, 1264 (2016).  "A rule is substantive rather than procedural if it alters the range of conduct or class of persons that the law punishes."  *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).  New substantive rules are retroactive in cases

---

Mar. 15, 2016); *Cummings v. United States*, 2016 WL 799267, at *6–*8 (E.D. Wis. Feb. 29, 2016).  The government submits that both *Dean* and *Cummings* are wrongly decided, but, in any event, both are distinguishable because neither *Dean* nor *Cummings* had the benefit of the Supreme Court's decision in *Molina-Martinez*.

[2] The exception allowing retroactivity for "watershed rules of criminal procedure" is limited to "procedural rules 'implicating the fundamental fairness and accuracy of criminal proceedings.'"  *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016) (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).  To come within this "extremely narrow" exception, *id*., "a new rule must meet two requirements: infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *Tyler v. Cain*, 533 U.S. 656, 665 (2001).  Although the Supreme Court has never found that a new procedural rule qualifies as watershed, *see Whorton v. Bockting*, 549 U.S. 406, 417–18 (2007), it has explained that the exception is intended for rules bearing the same "primacy and centrality" to the criminal justice process as the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *See, e.g*., *Saffle*, 494 U.S. at 495.  Accordingly, the exception has no application to this case.  *See Welch*, 136 S. Ct. at 1264 ("The parties agree that *Johnson* does not fall into the limited second category for watershed procedural rules.").

on collateral review because they "'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id*. at 352 (quoting *Bousley*, 523 U.S. at 620).

By contrast, procedural rules "regulate only the manner of determining the defendant's culpability." *Id*. at 353. Such rules "do not produce a class of persons convicted of conduct the law does not make criminal." *Id*. at 352. Examples of procedural rules include a rule requiring facts to be treated as elements of a crime, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000), or a rule regulating the admissibility of certain evidence at trial, *see Crawford v. Washington*, 541 U.S. 36 (2004). A new rule that broadens the sentencing court's discretion without changing the lawful sentencing range does not apply retroactively to cases on collateral review. For example, *United States v. Booker*, 543 U.S. 220 (2005), expanded a sentencing court's discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory. *Id*. at 245–68. The Tenth Circuit held that *Booker* is procedural and not retroactively applicable on collateral review. *United States v. Bellamy,* 411 F.3d 1182, 1186 (10th Cir. 2005). Where (as here) the government asserts that *Teague* bars retroactive application of a Supreme Court decision, "the court must apply *Teague* before considering the merits of the claim." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994) (emphasis in original).

In *Welch*, the Court held that the new rule of constitutional law announced in *Johnson* is retroactive to sentences imposed under the ACCA. As the Court explained in *Welch*, *Johnson* announced a new rule entitled to retroactive effect because it "changed the substantive reach" of the ACCA. *See Welch*, 136 S. Ct. at 1265. In other words, after *Johnson*, a court could not legally impose the 15-year sentence mandated by the ACCA if one of the defendant's predicate "violent felonies" fell only under the residual clause. Under the ACCA, when a court relied on the residual clause to find that the defendant had the necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of 15 years. *Compare* 18 U.S.C. § 924(a)(2) *with* 18 U.S.C. § 924(e)(1). The constitutional rule announced in *Johnson* renders the 15-year minimum prison sentence illegal, and that change is substantive:

7

it "affected the reach of the underlying statute rather than the judicial procedures which the statute is applied." *Welch*, 136 S. Ct. at 1265; *see also Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) ("*Johnson*, we conclude, announced a new substantive rule [in an ACCA case because a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment that the law cannot impose upon him."). As the Court stated in *Welch*, "*Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied." *Id.* at 1265.

By contrast, *Johnson* is a non-retroactive procedural rule as applied to the Guidelines career offender provision. Misapplications of the Sentencing Guidelines do not have the same consequences that the Court identified in *Welch*. A rule invalidating the crime-of-violence residual clause would establish that the defendant's Guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. *See In re Griffin*, 2016 WL 3002293, at *5 (11th Cir. May 25, 2016). The career offender Guideline does not trigger a statutory mandatory minimum sentence that would not otherwise apply and does not elevate the statutory maximum, as is true under the ACCA. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). In fact, Guidelines sentences must always be within the limits set by Congress; as a result, a Guidelines sentence imposed on the basis of an incorrect Guidelines range may be erroneous, but it is not illegal or unlawful as in a case involving prejudicial *Johnson* error under the ACCA. *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) ("Sun Bear's 360-month [Guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory career offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").

An error in calculating the Guidelines range, therefore, does not alter the statutory sentencing range or prevent reimposition of the same sentence without the career offender enhancement, as

would be true with prejudicial *Johnson* error in the ACCA setting. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 730 (2016) (procedural error does not have "the automatic consequence of invalidating a defendant's . . . sentence"). Put another way, "the Guidelines merely guide the execution of a court's discretion in selecting the appropriate sentence." *Frazier v. United States*, 2016 WL 885082, at *5 (E.D. Tenn. Mar. 8, 2016).

To illustrate, Pompa faced a statutory sentencing range of zero to ten years imprisonment for his federal firearm offense, *see* 18 U.S.C. § 922(g)(1), and his 48-month sentence was within those statutory parameters. If Pompa had not sustained two prior convictions for felony crimes of violence, defendant asserts that his Guidelines range would have been 37-46 months' imprisonment, which was also within the applicable statutory range. The mere fact that a different (even lower) Guidelines range might have applied but for the error does not alter the statutory range within which the sentence is imposed, and it does not render the initial 48-month sentence unlawful. Applying similar reasoning, the Eleventh Circuit, *see In re Griffin*, 2016 WL 3002293, at *5, and several district courts have rejected the argument that *Johnson* applies retroactively to a career offender designation. *See Henley v. United States*, 2016 WL 2643002, at *4–*5 (E.D. Tenn. May 9, 2016); *Hallman v. United States*, 2016 WL 593817, at *4–*5 (W.D.N.C. Feb. 12, 2016); *United States v. Stork*, 2015 WL 8056023, at *8 (N.D. Ind. Dec. 4, 2015); *United States v. Willoughby*, 2015 WL 7306338, at *7 (N.D. Ohio Nov. 18, 2015). *But see United States v. Ramirez*, 2016 WL 3014646, at *6–*9 (D. Mass. May 24, 2006); *United States v. Dean*, 2016 WL 1060229, at *12–*16 (D. Or. Mar. 15, 2016) (finding *Johnson* retroactive to career offender determinations).

Moreover, in cases describing appellate review under *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court has characterized errors in calculating a defendant's advisory Guidelines range as "procedural," rather than substantive. *See, e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) ("Failing to calculate the correct [advisory] Guidelines range constitutes procedural error.") (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). That reflects the role of the Guidelines in the sentencing process: they are a step in imposing

9

sentence, not a statutory direction on the range of available sentences. And although the meaning of "substance" and "procedure" can vary based on context, *see Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988), one court of appeals has relied on *Peugh*'s reference to "procedural error" to conclude that new rules affecting the calculation of a defendant's advisory Guidelines range are procedural and thus not retroactive on collateral review. *See Hawkins v. United States*, 724 F.3d 915, 917–18 (7th Cir. 2013) (supplemental opinion on denial of rehearing) (suggesting that because the Supreme Court described use of the incorrect Guidelines range as "procedural error," the *ex post facto* holding in *Peugh* would not be applied retroactively on collateral review); *see also Herrera-Gomez v. United States*, 755 F.3d 142, 146–47 (2d Cir. 2014) (holding that *Peugh* announced a new, non-watershed procedural rule that could not support a second-or-successive Section 2255 motion).

Nor does *Johnson* qualify as a substantive rule on the theory that it expands the sentencing court's discretion to consider a broader range of sentences than those that existed previously. A rule invalidating a mandatory minimum statutory punishment illustrates this type of substantive rule. *See Miller v. Alabama*, 132 S. Ct. 2455 (2012) (invalidating mandatory life without parole for juvenile homicide defendants). At the time of sentencing in *Miller*, the court had one, and only one, sentencing option – life imprisonment. After the Supreme Court's decision in *Miller*, however, the sentencing court in such a case must have discretion to consider a broader and more lenient range of sentencing options than those that existed previously. Accordingly, the Court held, *Miller* is a substantive decision. *See Montgomery*, 136 S. Ct. at 733–35. That rationale does not apply with respect to an error in calculating a defendant's Guidelines range, however, because courts always had discretion to consider a range of sentencing options in Guidelines cases.

Before *United States v. Booker*, sentencing courts had the authority to "depart" from the Guidelines range in appropriate cases. *See* USSG § 5K2.0, p.s.; *see also Koon v. United States*, 518 U.S. 81, 92 (1996); *Williams v. United States*, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from

10

the range in certain circumstances, are decisions that are left solely to the sentencing court."). After *Booker*, sentencing courts have broader authority to "vary" from the now-advisory Guidelines range. *See Booker*, 543 U.S. at 245–46. The judicial authority to impose lesser sentences than called for by the Guidelines illustrates that an erroneous career offender designation is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes. Accordingly, *Johnson*'s application to the Guidelines constitutes a procedural rule, not a substantive decision entitled to retroactive application in Guidelines cases on collateral review.

### III.     2nd Degree Assault-Drugging

While the United States concedes that *Johnson*'s analysis regarding the residual clause of the ACCA also applies to the identically worded clause of the career offender guideline, Sentencing Guidelines § 4B1.2(a)(2), and to other guidelines that use the career offender guideline's definition of "crime of violence," including § 2K2.1 & cmt. n.1 (firearms guideline), that analysis is inapplicable here because this case does not implicate the residual clause, but rather an offense that is enumerated within the definition of "crime of violence" in Application Note 1 to the Commentary of section § 4B1.2(a)(2).

"Commentary in the Sentencing Guidelines that interprets or explains a guideline is binding unless it violates the Constitution or a federal statute or is inconsistent with that guideline." *United States v Morris, 562 F.3d 1131*, (10th Cir. 2009) (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Defendant cannot offer any basis to conclude that the commentary violates the constitution, a federal law, or is inconsistent with the text of the guideline. The analysis must begin with the relevant guideline for defendants' firearm offense, which is § 2B3.1(a) "Crime of violence" has the "meaning given to that term in § 4B1.2(a) <u>and Application Note 1 of the Commentary to § 4B1.2.</u>" U.S.S.G. § 2K2.1 cmt. n. 1 (emphasis added). The text and commentary of § 4B1.2 constitute the commentary of other sections within the guidelines to include § 2K2.1, in equal measure. Furthermore, U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) defines "crime of violence" virtually identical to § 4B1.2 and § 2K2.1. The defendant

similarly cannot point to any constitutional or statutory violation created by the commentary. Indeed, the most recent proposed amendments to the Sentencing Guidelines import the enumerated list of offenses from the commentary to the Guideline.  *See* Proposed Amendment to the Sentencing Guidelines: "Crime of Violence" and Related Issues at 2 (Aug. 12, 2015).[3]

The discussion of the proposed amendment to the "Crime of Violence" in the residual clause and to the definition of "Crime of Violence" reads in relevant part as follows:

> In addition, the proposed amendment amends §4B1.2 to clarify and revise the list of "enumerated" offenses.  While some offenses covered by the definition are listed in the guideline (such as burglary of a dwelling, arson, and extortion), many other off definition are listed in the commentary instead (e.g., murder, kidnapping, aggravated assault, robbery).  The proposed amendment makes some revisions to the list of enumerated offenses, *moves all enumerated offenses to the guideline*, and provides definitions for the enumerated offenses in the commentary.

*Id.* (emphasis added).  This proposal contradicts the defendant's assertion that the text of the Guideline and the commentary are at odds and in violation of law and that the commentary enumerating assault is connected only to the residual clause.

The language of the applicable Guidelines is clear and squarely applicable to this case. The defendant's 2nd degree assault conviction qualifies as a crime of violence for sentencing purposes.

---

[3] *Available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150812_RF_Proposed.pdf) (noting that the "proposed amendment is a result of the Commission's multi-year study of statutory and guideline definitions relating to the nature of a defendant's prior conviction (e.g., "crime of violence," "aggravated felony," "violent felony," "drug trafficking offense," and "felony drug offense") and the impact of such definitions on the relevant statutory and guideline provisions (e.g., career offender, illegal reentry, and armed career criminal)).  *See* United States Sentencing Commission, "Notice of Final Priorities," 79 FR 49378 (Aug. 20, 2014); "Proposed Priorities for Amendment Cycle," 80 FR 36594 (June 25, 2015).

Defendant Pompa cities *United States v. Rodriguez-Enriquez*, 518, F.3d 1191 (10th Cir. 2008) where the Tenth Circuit found that 2nd Degree Assault-Drugging was not a crime of violence under USSG § 2L1.2. If this Court accepts the defendant's argument under this case then 2nd Degree Assault-Drugging is not a crime of violence. However, in *United States v. Hanns*, 464 Fed.Appx. 769, 772 (10th Cir. 2012), the Court held that 2nd Degree Assault-Unlawful Admission of Drugs "includes an "intentional" mens rea requirement, thus fulfilling the Skyes standard and precluding Begay's exception. The crime is also similar in risk, as well as in degree, to the enumerated crimes listed in § 4B1.2(a)(2)." The *Hannas* Court found that 2nd Degree Assault-Drugging was a crime of violence noting that the administration of drug to a victim poses a substantial risk of physical injury.

**IV.    Even if Pompa is entitled to relief, this Court should not resentence him.**

Even if Pompa could satisfy the cause-and-prejudice standard, show that *Johnson* is retroactive, and establish that he was not convicted of two "crimes of violence," this Court should not grant a resentencing hearing to lower his sentence. Pompa committed a serious felony when he possessed a firearm after being convicted of a felony offense. Moreover, Pompa fell into criminal history category IV. The Court received all the available information regarding Pompa prior to issuing a sentence and was in the best position in rendering a fair and just sentence. The Supreme Court has declared that the Sentencing Guidelines are just one of several factors enumerated in 18 U.S.C. § 3553(a) and courts have broad discretion to consider information concerning the defendant's life and characteristics, including conduct on which he was or was not convicted on when rendering a sentence. *See Rita v. United States*, 551 US 338, 349 (2007); *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005). This Court understood the serious nature of the defendant's crime and his characteristics. Even the *Rodriquez* Court expressed concern for committing such a serious felony of drugging a victim when it clearly stated, "Finally, we note the limited impact of our holding in this case. The error in this case was only in computing the Guidelines sentencing range. But that range does not necessarily determine a defendant's sentence. A sentencing judge may, for proper reasons, depart

13

from the Guidelines range; and under *Gall v. United States,* ––– U.S. ––––, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the judge has discretion to vary from that range. In exercising that discretion the judge is not bound by what may seem to be an artificial distinction between shooting a victim and poisoning him." *United States v. Rodriguez*, 518 F3.d 1191 at 1195.   For those reasons, the Court should not disturb the 48-month sentence that Pompa received.  Accordingly, this Court should not grant relief.

   Dated this 18th day of August 2016.

                                        Respectfully submitted,
                                        JOHN WALSH
                                        United States Attorney

                                        By:  s/Jeremy Sibert
                                        JEREMY SIBERT
                                        Assistant United States Attorney
                                        1225 17th Street, Suite 700
                                        Denver, Colorado  80202
                                        E-mail: Jeremy.Sibert@usdoj.gov
                                        Attorney for the United States
                                        303 454 0100

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2016, I electronically filed the foregoing GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE 28 U.S.C. § 2255 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address(es):

   Josh Lee
   Lawyer for Defendant Pompa

                                        s/Jeremy Sibert
                                        Jeremy Sibert
                                        U.S. Attorney's Office
                                        1225 Seventeenth Street, Suite 700
                                        Denver, Colorado 80202
                                        Telephone: (303) 454-0100
                                        Fax:   (303) 454-0406